Reese, J.
delivered the opinion of the court.
A receiver in England is described as a person, indifferent between the parties, appointed by the court to receive the rents, issues, or profits of lands, or thing in question in a court of chancery, pending the suit, when it does not seem *108 reasonable to the court that either party should do it. Wyatt’s ■ Practical Register, 108. He is considered as an officer of the court. Newland’s Ch. Pr. 206. He usually gives security for the faithful performance of his duties. So entirely distinct in that country are those duties deemed from those which appropriately belong to the office of a master in chancery, that it is incumbent upon the latter to select a suitable receiver and report him to the court for confirmation; and when the receiver has entered upon his office, it belongs to the master, as stated in Hoffman’s office and duties of Master in Chancery, from to time to time, to audit and report upon his accounts. Indeed, it is a rule in England, that a master in cban-eery cannot be a receiver. In the constitution of our courts of chancery in this State, we have united the office and duties of master, so far as they exist under our system, with those of clerk. But no statute has been passed to annex the office and duties of receiver to those of clerk and master. A practice, indeed, very early existed in our chancery courts, and has, perhaps, not yet been discontinued, of sometimes appointing the clerk and master a receiver in those cases in which it was supposed the latter office would the least interfere with the proper discharge of his other duties. This practice, originating when the simplicity and paucity of chancery suits, and the limited number of persons qualified to act as receivers, was such as might seem to indicate its necessity, should now, it is believed, -under a change in the circumstance of the country and in the character of chancery investigations, be entirely abandoned. There is nothing hero any more than in England to recommend this union of duties, distinct and scarcely compatible. Our master may select and report to the court a suitable receiver; may sometimes take from him security for the performance of his duties, and may pass upon his accounts in settlement. With us, therefore, these offices are in their nature and functions distinct; and a court of chancery can no more impose, without his consent, the office of receiver upon its clerk and master, than it can upon any private individual. If, therefore, in the present case, the clerk and master had, by discharging any of the duties of receiver, manifested his acceptance of the office, and the money in question had been *109 in bis hands in that character, we are of opinion that the se- ' 1 curities of the clerk and master would not have been . . sible for its loss or misapplication. That the money, however, came into the hands of this clerk and' master in his capacity of clerk and master, is put beyond all doubt by the order of the court itself, out of which this controversy has arisen, which is in the following words: “Nelson Peterson, et al. complainants vs. Sami. R. Green, et al. defendants. Ordered by the court, that Nathan Ewing, the receiver, pay into the hands of the clerk and waster, the funds in his hands as receiver in this case; that he file his report and account with the clerk and master, who will make report at the next term; that the clerk and master report what would be a reasonable allowance to the receiver for his services; and it is further ordered, that the clerk and master be appointed receiver of said funds, and continuelo loan the same out at legal interest.” This order was made at the April term, 1828. The mandatory part of this order is upon the former receiver, that he pay over the funds in his hands to the clerk and master; that he file his report and account with the clerk cud master, and account with the clerk and master in that character; that at the next term he report the report and account of the receiver and a reasonable allowance to him. By dm very terms of this order, the funds were to be placed in the Hands of the clerk and master in his capachy of clerk and master, and the payment to him, and his reception of the money as clerk and master, were acts in entire consonance with the duties and functions of that office. He so regarded it, for afterwards, on the 29th of March, he filed a report showing the amount of funds received by him from the former receiver, in which, afeer stating the cause, he says, “the subscriber, the clerk and master, makes the following report,” &c. The legal operationof the order, therefore, and the official declaration of the clerk and master, concur in establishing the reception of the money by Eli Talbot in his character of clerk and master. Such being the character in which the money was received, it is urged that the latter part of the order, without more, and by its own proper force will in legal operation, place the money in his hands as receiver. The record shows no act whatever done by him in that char. *110 acter. And there is no fact or circumstance from which an inference of his acceptance of the office of receiver can be drawn, unless he having been clerk and the order being found Up0n rec01-d? it is inferred from that fact, that he, and not a deputy clerk, penned the order, and that he did not object to it; for if he had, it is in argument inferred again, that the chancellor might have appointed another, and that if he did not object, it was an implied acceptance, and fixes him with the office. Certainly this would be pushing the matter to the utmost, in the effort to change by mere legal operation, the character in which this money was certainly received, into another in which it is supposed it may have been retained. It has, indeed, as has been insisted, been determined by this court, that if one be appointed administrator and afterwards guardian, and give bond, with sureties in both offices, the sureties for the administration shall continue liable for two years, the time limited by law for the settlement of the estate, and the sureties for the guardianship shall then become liable by operation of law, without any further act by their principal as guardian, or settlement as administrator. But the case cited differs materially from the present, by the decisive act of acceptance, manifested in giving the bond and taking the oath of guardian. No such act of acceptance appears in this case; nor, indeed, any act of acceptance of the office of receiver. We have not examined very particularly the charge of the circuit judge upon this part of the case, for we are satisfied there is nothing in the record which would have sustained a verdict for the plaintiffs in error if such a verdict had been rendered; and we think there is no error in the charge which should operate to set aside a verdict, which it appears to us, from the record, is altogether correct, and ought not to be varied by any proper charge which could be given. Let the judgment be affirmed.
Judgment affirmed.